IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMUEL RANDOLPH, | CIVIL ACTION NO. 1:22-cv-01239-JPW |
| Plaintiff, | |
| v. | The Hon. Jennifer P. Wilson |
| CITY OF HARRISBURG, SERGEANT ROBERT FEGAN, and INVESTIGATORS DONALD HEFFNER, DAVID LAU, TIMOTHY CARTER and KEVIN DUFFIN, in their individual capacities, | *Electronically Filed* |
| Defendants. | |

**BRIEF IN SUPPORT OF DEFENDANT CITY OF HARRISBURG'S MOTION FOR SUMMARY JUDGMENT**

Brian P. Gabriel (PA 73132)
bgabriel@cdblaw.com
Direct Dial (412) 395-1267

CAMPBELL DURRANT, P.C.
535 Smithfield Street, Suite 700
Pittsburgh, PA  15222
(412) 395-1280 (Telephone)
(412) 395-1291 (Facsimile)

*Counsel for Defendant, City of Harrisburg*

**TABLE OF CONTENTS**

<u>Page</u>

Table of Citations ................................................................................. ii

I.    PROCEDURAL HISTORY ............................................................ 1

II.    STATEMENT OF FACTS ............................................................ 2

III.   STATEMENT OF QUESTIONS INVOLVED ................................ 6

IV.   ARGUMENT ................................................................................ 7

    A. The absence of a constitutional violation by a Harrisburg police officer precludes municipal liability ........................................... 10

    B. Plaintiff fails to substantiate allegations that Harrisburg had a policy or custom of condoning unconstitutional homicide investigations and thereby caused his conviction .................... 11

    C. Plaintiff fails to substantiate his allegations of Defendant Harrisburg's failure to Supervise and Train. ........................... 16

V.    CONCLUSION ........................................................................... 21

Certificate Pursuant to Local Rule 7.8(b) ............................................ 23

**TABLE OF CITATIONS**

Page

*Beck v. City of Pittsburgh,*
  89 F.3d 966 (3d Cir. 1996) ...................................................... 12, 13

*Bielevicz v. Dubinon,*
  915 F.2d 845 (3d Cir. 1990) ........................................................ 12

*Blair v. City of Pittsburgh,*
  711 F. App'x 98 (3d Cir. 2017) ................................................... 11

*Board of County Com'rs of Bryan County, Okla. v. Brown,*
  520 U.S. 397 (1997).......................................................... 9, 17, 18

*Brice v. City of York,*
  528 F. Supp. 2d 504 (M.D. Pa. 2007) ....................................... 14

*Brown v. Muhlenberg Twp.,*
  269 F.3d 205 (3d Cir. 2001) ..................................................... 12, 16

*Brown v. Ridley Twp.,*
  Civil Action No. 14-5874,
  2015 WL 568640 (E.D. Pa. Feb. 10, 2015) .............................. 15

*Carswell v. Borough of Homestead,*
  381 F.3d 235 (3d Cir. 2004) ....................................................... 20

*City of Canton v. Harris,*
  489 U.S. 378 (1989).................................................................... 16

*City of Los Angeles v. Heller,*
  75 U.S. 796 (1996)................................................................. 10, 11

*City of Oklahoma City v. Tuttle,*
  471 U.S. 808 (1985).................................................................... 17

*Collins v. City of Harker Heights,*
  503 U.S. 115 (1992).................................................................... 10

*Commonwealth v. Randolph*,
   873 A.2d 1277 (Pa. 2005) ............................................................... 1

*Connick v. Thompson*,
   563 U.S. 51 (2011) ............................................................ 9, 18, 20

*Estate of Bing v. City of Whitehall, Ohio*,
   373 F. Supp. 2d 770 (S.D. Ohio 2005) ............................................ 20

*Estate of Roman v. City of Newark,*
   914 F.3d 789 (3d Cir. 2019) ....................................................... 11, 12

*Forrest v. Parry,*
   930 F.3d 93 (3d Cir. 2019) .............................................. 7, 9, 11, 16-18

*Gonzales v. Borough of Red Bank,*
   No. 18-13009, 2020 WL 2029338 (D.N.J. April 28, 2020) ................... 15

*Grazier ex rel. White v. City of Philadelphia,*
   328 F.3d 120 (3d Cir. 2003) ....................................................... 10, 11

*Hightower v. City of Philadelphia,*
   130 F. 4th 352 (3d Cir. 2025) ............................................... 9, 11, 17-19

*Matubang v. City and County of Honolulu,*
   Civil Action Nos. 09-00130, 10-00173,
   2010 WL 1850184 (D. Hawaii May 7, 2010) ....................................... 21

*Miller v. City of Philadelphia,*
   162 F.4th 88 (3d Cir. 2025) ............................................................ 18

*Monell v. Dep't of Social Servs.*,
   436 U.S. 658 (1978) ..................................................................... 8, 9

*Montgomery v. De Simone,*
   159 F.3d 120 (3d Cir. 1998) ....................................................... 12, 17

*Pharaoh v. Dewees,*
   Civil Action No. 14-3116,
   2016 WL 2593842 (E.D. Pa. May 4, 2016) ........................................ 15

*Postie v. Frederick,*
No. 3:14-CV-00317, 2016 WL 4521855 (M.D. Pa. Aug 8, 2016),
report and recommendation adopted,
2016 WL 4502499 (M.D. Pa. Aug 29, 2016) .........................................15

*Randolph v. Secretary Pennsylvania Dep't of Corrections*,
5 F.4th 362 (3d Cir. 2021).......................................................................2

*Randolph v. Wetzel*,
No. 1:06-cv-901, 2020 WL 274522 (M.D. Pa. May 27, 2020).............1, 2

*Reiff v. Marks,*
511 F. App'x 220 (3d Cir. 2013) ...........................................................10

*Sample v. Diecks,*
885 F.2d 1099 (3d Cir. 1989)................................................................18

*Simpson v. Ferry,*
202 F. Supp. 3d 444 (E.D. Pa. 2016)....................................................14

*Thomas v. Cumberland County,*
749 F.3d 217 (3d Cir. 2014)..................................................................19

*Watson v. Abington Twp.,*
749 F.3d 217 (3d Cir. 2014)..................................................................19

*Wright v. City of Phila.,*
685 F. App'x 142 (3d Cir. 2017) ...........................................................12

**BRIEF IN SUPPORT OF DEFENDANT CITY OF HARRISBURG'S
MOTION FOR SUMMARY JUDGMENT**

Defendant, City of Harrisburg ("Defendant Harrisburg"), through its counsel, Brian P. Gabriel, Esq. and Campbell Durrant, P.C., files the following *Brief in Support of Motion for Summary Judgment* pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7.4 through 7.8 and 56.1.

## I.    PROCEDURAL HISTORY

In July 2002, Samuel Randolph was arraigned on 12 charges related to two shooting deaths on September 19, 2001, and a prior shooting incident on September 2, 2021. *Randolph v. Wetzel*, No. 1:06-cv-901, 2020 WL 2745722, at *1 (M.D. Pa. May 27, 2020); *Commonwealth v. Randolph*, 873 A.2d 1277, 1280 (Pa. 2005).

On May 14, 2003, a jury found Samuel Randolph guilty of multiple offenses, including two counts of first-degree murder, conspiracy to commit murder, two counts of criminal contempt, three counts of aggravated assault, two counts of firearm violations, and reckless endangerment. *See Randolph*, 873 A.2d at 1280. Randolph's post-conviction challenges in state court were unsuccessful. *Randolph*, 873 A.2d 1277.

In federal *habeas* proceedings, the District Court granted Randolph's request for a hearing on a few of his claims. *Randolph*, 2020 WL 2745722, at *5. The District Court granted Randolph's *habeas* petition and ordered a

1

new trial, finding that his Sixth Amendment rights were violated when the trial court denied a short continuance that would have allowed Randolph to have private counsel of his choice. *Randolph*, 2020 WL 2745722, at *7-12. The Third Circuit affirmed. *Randolph v. Secretary Pennsylvania Dep't of Corrections*, 5 F.4th 362 (3d Cir. 2021).

After the U.S. Supreme Court denied certiorari, the case was remanded for retrial. (ECF 1, ¶¶ 175-176; ECF 20, ¶¶ 175-176). On April 6, 2022, the District Attorney's Office moved for a *nolle prosequi*, which was granted on April 12, 2022. (ECF 1, ¶ 177; ECF 20, ¶ 177).

On August 9, 2022, Randolph filed the subject Complaint against the City of Harrisburg and five retired members of the Harrisburg Police Department in their individual capacities.[1] (ECF 1, ¶¶ 6-11).

## II.    STATEMENT OF FACTS

Defendant Harrisburg refers to the *Joint Concise Statement of Material Facts* filed by Defendants. The undisputed material facts specific to Harrisburg's *Motion for Summary Judgment* include the following.

Harrisburg police officers attend basic training and obtain their Act 120 certification through the Municipal Police Officers Education and Training Commission (MPOETC). (JSOF ¶¶ 101-102). The basic training curriculum

---

[1] Timothy Carter, who died before this action was filed, is not a party. (ECF 53).

was approximately 480 hours of training and included 100 hours of training under the category of "Law" and 41 hours for "Investigations." (JSOF ¶ 105).

After obtaining Act 120 certification through MPOETC, officers began in-house and field training with the Harrisburg Police Department (HPD). (JSOF ¶ 106). The field training program covered various aspects of being a patrol officer, including interviews and preparing police reports, probable cause affidavits, and criminal complaints. (JSOF ¶ 107).

HPD officers must attend mandatory training courses with the MPOETC each year, which include legal updates. (JSOF ¶ 108). The HPD also reviewed a monthly bulletin on legal updates and distributed information from these updates where appropriate. (JSOF ¶ 112). The Department maintained a Training Unit SOP and regularly evaluated additional training that would benefit the department. (JSOF ¶ 111).

Officers chosen for assignment to the Criminal Investigations Division (CID), like those identified in this lawsuit, received additional career development, which included a 90-day program that was more advanced training on investigations. (JSOF ¶ 109).

The HPD was accredited with the Commission on Accreditation for Law Enforcement Agencies (CALEA) before changing to the Pennsylvania Chiefs of Police Association as its accreditation agency in 2003. (JSOF ¶¶

3

113-114). Compliance with accreditation standards required written policies that aligned with the guidelines and proof that the standards were being followed, all of which is subject to an audit process. (JSOF ¶¶ 116-117).

The accreditation manager held meetings to review the current standards, especially when updates were required to comply with the best practices of law enforcement. (JSOF ¶ 118). The HPD also worked with the accreditation manager on the development of general orders and policies to ensure compliance with the accreditation standards. (JSOF ¶¶ 119-120). The HPD has maintained its accreditation status. (JSOF ¶ 115).

It was standard practice in homicide investigations for the primary investigator(s) to work closely with the Dauphin County District Attorney's office. (JSOF ¶ 121). The lead detective(s) in a homicide investigation would submit the case information and draft affidavits for review and authorization to proceed with a search warrant or the filing of charges. (JSOF ¶ 122).

### Other cases involving alleged investigatory misconduct

The HPD has no record of any instance where Robert Fegan, David Lau, Donald Heffner, Timothy Carter, or Kevin Duffin were found or determined to have engaged in unconstitutional investigation tactics. (JSOF ¶ 123).

Plaintiff identifies four other individuals who were allegedly subjected to a wrongful prosecution and/or conviction by City of Harrisburg police officers: Lorenzo Johnson, Sean Primm, Larry Trent Roberts, and Dennis Robinson.  (ECF 01, ¶¶ 188 through 254).

**Lorenzo Johnson** was charged with criminal homicide and criminal conspiracy for a murder that took place in December 1995. (JSOF ¶ 126). He was found guilty in March 1997. (JSOF ¶ 127). Johnson was ultimately unsuccessful with all of his post-conviction challenges, which focused on a sufficiency of the evidence argument and a claim that the prosecutor failed to disclose a plea agreement with a government witness. (JSOF ¶¶ 128-135). In 2017, Johnson plead *nolo contendere* plea for third degree murder and conspiracy and received reduced sentences. (JSOF ¶ 136).

**Sean Primm** was charged and prosecuted in connection for a September 2005 shooting. (JSOF ¶ 143). Donald Heffner was the lead detective. (JSOF ¶ 144). In May 2007, a jury found Primm not guilty of criminal homicide and carrying a firearm without a license. (JSOF ¶ 145). There are no records of Primm pursuing a civil claim relating to this arrest or prosecution. (JSOF ¶¶ 146-148).

5

**Larry Trent Roberts** was charged and prosecuted for the December 2005 murder of Duwan Stern. (JSOF ¶ 154). In November 2007, Roberts was found Roberts guilty of first-degree murder. (JSOF ¶ 155). However, his trial counsel was determined to have been ineffective for failing to present alibi evidence and Roberts was granted a new trial. (JSOF ¶¶ 156-157). In 2019, Roberts was acquitted. (JSOF ¶ 158). He initiated a wrongful conviction case in 2021, which is pending before this Court. (JSOF ¶ 159).

**Dennis Robinson** was prosecuted for the October 2009 homicide of Jermaine Dawson. (JSOF ¶ 162). In October 2011, he was found guilty. (JSOF ¶ 163). Robinson has not succeeded with any of his post-conviction challenges. (JSOF ¶¶ 164-168).

## III.   STATEMENT OF QUESTIONS INVOLVED

A.   Whether the absence of a constitutional violation by a Harrisburg police officer precludes municipal liability?

<u>Suggested Answer</u>:    Yes.

B.   Whether Plaintiff produces evidence that Harrisburg had a policy or custom of condoning unconstitutional homicide investigations and thereby caused his conviction?

6

<u>Suggested Answer</u>:    No.

C.    Whether Plaintiff produces evidence that Harrisburg was deliberately indifferent by failing to train or supervise homicide investigators, which caused his alleged constitutional injuries?

<u>Suggested Answer</u>:    No.

## IV.    ARGUMENT

A plaintiff may proceed with a § 1983 municipal liability claim by demonstrating that: (1) a policy or custom caused his injury; or (2) a failure by the municipality that reflects a "deliberate or conscious choice" caused his injury. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).

Randolph sets forth one count (Count VI) against Defendant Harrisburg for municipal liability under 42 U.S.C. § 1983. As alleged, Harrisburg had longstanding policies and customs that resulted in the wrongful conviction of Randolph and others. These are described generally as permitting and condoning the fabrication of inculpatory evidence, including incriminating statements through coercion and other improper tactics, as well as the withholding of exculpatory evidence. (ECF 1, ¶¶ 178-184, 255-258, 293-294). In support of this claim, Randolph advances

7

allegations of such misconduct by the Individual Defendants and other Harrisburg officers in specific homicide cases. (ECF 01, ¶¶ 185-254). Randolph avers that these cases demonstrate pervasive misconduct within the HPD "at the time of the investigation leading to Mr. Randolph's murder convictions." (ECF 1, ¶ 181).

Randolph contends that this misconduct "committed with the knowledge of and in full view of HPD supervisors" who exhibited "deliberate indifference to it." (ECF 1, ¶ 182). According to the Complaint, "each instance of unconstitutional misconduct described above was reviewed and sanctioned by at least one, if not more than one, HPD supervisors." (ECF 1, ¶ 183). Further, Randolph claims that "instead of disclosing this misconduct to prosecutors," the HPD supervisors concealed it themselves and either: (a) ordered their supervisees – e.g., Lau, Heffner, Carter, and Duffin – to conceal it; (b) encouraged their supervisees to do the same; or (b) did not affirmatively encourage their supervisees to disclose it." (ECF 1, ¶ 184).

A municipality can be liable for constitutional violations by its employees when the alleged unconstitutional act implements a policy adopted by that municipality. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). The plaintiff must prove that the municipality itself, through the implementation of municipal policy or customs, caused the constitutional

violation. *Monell*, 436 U.S. at 690. In short, a plaintiff "must show that the city's choices were the 'moving force' behind the constitutional violation." *Hightower v. City of Philadelphia,* 130 F.4th 352, 356 (3d Cir. 2025) *(citing Monell,* 436 U.S. at 694).

Municipal action may be established through "the decisions of a government's lawmakers, the acts of its policymaking officials," or "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011). To establish liability, a plaintiff must prove that the municipality's unconstitutional policy or custom was the "moving force" behind the alleged injury. *Board of County Com'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997).

A claim "predicated on a failure or inadequacy has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). To meet this standard, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bryan County*, 520 U.S. at 410.

9

For the reasons explained below, the evidence does not substantiate the allegations of municipal liability and Randolph has failed to establish a triable claim.

### A. The absence of a constitutional violation by a Harrisburg police officer precludes municipal liability.

The analysis of municipal liability requires the initial separation of two issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the City is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).

A plaintiff who fails to establish an underlying constitutional violation is precluded from establishing municipal liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (a municipality cannot be held liable under § 1983 when "a person has suffered no constitutional injury at the hands of the individual officer[s]."); *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003) ("There cannot be an award of damages against a municipal corporation based on the actions of one of its officers when ... the officer inflicted no constitutional harm.") (internal quotations omitted); *Reiff v. Marks*, 511 F. App'x 220, 223 (3d Cir. 2013) (same).

The Individual Defendants have set forth evidence and arguments substantiating their position that Plaintiff's constitutional rights were not

10

violated. If the Court determines that the Individual Defendants did not commit a constitutional tort, summary judgment is required on the derivative *Monell* claim. *Heller*, 475 U.S. at 799; *Grazier*, 328 F.3d at 124; *Blair v. City of Pittsburgh*, 711 F. App'x 98, 103 (3d Cir. 2017).

### B. Plaintiff fails to substantiate allegations that Harrisburg had a policy or custom of condoning unconstitutional homicide investigations and thereby caused his conviction.

Randolph alleges that Harrisburg had a policy or custom that caused his constitutional injury. The Complaint refers to "policy" though it speaks mainly to practices or "custom." A policy is an official proclamation, policy or edict issued by an individual having final decision-making authority. *Hightower v. City of Philadelphia,* 130 F.4th 352, 356 (3d Cir. 2025) *(citing* and *quoting Forrest,* 930 F.3d at 105); *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (same).

Randolph has not identified, and the record does not contain evidence of an unconstitutional proclamation, policy or edict issued by a Harrisburg decisionmaker. Moreover, "the lack of a policy is not a policy." *Hightower*, 130 F.4th at 356. As such, the remaining argument in this section focuses on the allegations of a custom whereby Harrisburg permitted, acquiesced or even directed unconstitutional homicide investigations. (ECF 1, ¶ 178).

11

Custom, unlike policy, refers to a course of conduct that while not expressly authorized, "is so well-settled and permanent as virtually to constitute law." *Estate of Roman*, 914 F.3d at 798 (*citing* and *quoting* *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). This can be demonstrated through persistent, long-standing practices reflecting the municipality's standard operating procedure. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001); *Wright v. City of Phila.*, 685 F. App'x 142, 147 (3d Cir. 2017). A plaintiff must show "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (citation omitted).

In *Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996), the Court addressed an alleged custom of permitting police officers to use excessive force. Reversing the district court's order granting the City's Rule 50 motion, the Third Circuit concluded that the plaintiff had provided sufficient evidence of notice and acquiescence. The underlying incident took place on October 31, 1993, and prompted Beck to file a citizen's complaint. Three prior similar complaints were filed against the officer (Williams) in 1991, followed by

12

Beck's complaint (November 1993) and then another similar complaint just over two months later (January 1994). The five complaints "came in a narrow period of time and were of similar nature," such that "a reasonable jury could have inferred that the Chief of Police knew, or should have known, of Williams's propensity for violence when making arrests." *Id*. at 973.

From there, the Third Circuit found "considerably more than Beck's complaints from which a reasonable jury could have found that the City's procedures are inadequate to protect civilians from police misuse of force." The Court emphasized evidence that the office of professional standards "itself was structured to curtail disciplinary action and stifle investigations into the credibility of the City's police officers." *Id*. at 974. This evidence included statistics and a year-end report that substantiated an excessive force problem, inadequate investigations, and lack of disciplinary action. *Id*.

In contrast to *Beck*, the record in this case reveals no history of prior similar complaints. Nor is there other evidence to serve as a foundation for Plaintiff's custom allegations. The cases identified by Randolph are not probative of notice or acquiescence.

- Lorenzo Johnson's criminal case was initiated about five years before Randolph's arrest. His conviction was upheld, and there were no findings of improper investigation by HPD officers. (JSOF ¶¶ 126-135).

13

- Sean Primm was prosecuted for a murder that occurred four years *after* Randolph's arrest. Primm was acquitted, presumably because the jury concluded that the prosecution had not met its burden. There is no record of any findings of improper investigation by HPD officers. (JSOF ¶¶ 142-145).

- Larry Trent Roberts was prosecuted for a murder committed almost five years *after* Randolph's arrest. His conviction was overturned because of a Sixth Amendment violation due to the trial court's denial of continuance. There have been no findings of improper investigation by HPD officers. (JSOF ¶¶ 154-158).

- Dennis Robinson was prosecuted for a murder committed about eight years *after* Randolph's arrest. Robinson's 2011 conviction has not been overturned, and there have been no findings of improper investigation. (JSOF ¶¶ 162-168).

Similarly, there is no evidence of civil cases that would have alerted Harrisburg to the alleged pattern of unconstitutional investigations. *Brice v. City of York*, 528 F. Supp. 2d 504, 519-520 (M.D. Pa. 2007); *see also Simpson v. Ferry*, 202 F. Supp. 3d 444, 453 (E.D. Pa. 2016) ("mere allegations, and even settlements, do not establish liability or the existence of an unlawful custom") Instead, those cases reflect a handful of complaints that appear dissimilar and were dismissed in any event. (JSOF ¶¶ 123-124). There are no adverse dispositions or other evidence of a substantiated claim. There is no evidence of a single finding in any court or by any agency, that one of the Individual Defendants violated constitutional standards.

14

Thus, Randolph fails to provide evidence of a pattern of constitutional violations that could have established notice to Harrisburg. See, e.g. *Gonzalez v. Borough of Red Bank*, No. 18-13009, 2020 WL 2029338, *10 (D.N.J. April 28, 2020) (two prior lawsuits involving defendant detectives insufficient to demonstrate notice, particularly where both cases were dismissed and never adjudicated on the merits); *Postie v. Frederick*, No. 3:14-CV-00317, 2016 WL 4521855, at *5 (M.D. Pa. Aug. 8, 2016), *report and recommendation adopted*, 2016 WL 4502499 (M.D. Pa. Aug. 29, 2016) (complaint failed to substantiate a pattern of constitutional violations despite attaching four lawsuits alleging Fourth Amendment violations by the defendant officer and other township officers "where none of those lawsuits alerted the Township to problems concerning the preparation of affidavits of probable cause or that police officers where obtaining illegal warrants."); *Pharaoh v. Dewees*, Civil Action No. 14-3116, 2016 WL 2593842, at *7 (E.D. Pa. May 4, 2016) (five excessive force lawsuits – two defense verdicts and three settlements – did not establish a pattern of excessive force by the officers).

The absence of notice evidence fatally undermines the allegations that Harrisburg ignored, allowed, encouraged, or directed officers to employ unconstitutional tactics during their homicide investigations. *Brown v. Ridley*

15

*Twp.*, Civil Action No. 14-5874, 2015 WL 568640, at *6 (E.D. Pa. Feb. 10, 2015) (lawsuits and newspaper articles describing use of tasers in specific incidents did not evidence a custom because factual allegations did not show that the municipality was "aware of any similar taser-related conduct by their police officers and then failed to take appropriate precautions."). In this circumstance, Plaintiff lacks evidence of a direct causal link between the alleged policy or custom and the alleged constitutional deprivation. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (*citing City of Canton v. Harris*, 489 U.S. 378 (1989)).

Accordingly, Randolph has failed to establish an issue of material fact with respect to his claims that Harrisburg inflicted the alleged constitutional injury through its unlawful custom or policy. Therefore, summary judgment is appropriate.

### C. Plaintiff fails to substantiate his allegations of Defendant Harrisburg's Failure to Supervise and Train.

It is possible for a plaintiff to pursue both a policy/custom claim and that a "failure" caused their constitutional injury. *Forrest*, 930 F.3d at 107 (discussing viability of pursuing both). Randolph's Complaint focuses on the policy/custom standard, but includes allegations that Harrisburg failed "to properly train and supervise officers on the constitutional limitations on their

16

investigative, detention, arrest, and other powers." (ECF 1, ¶ 258d). Additionally, Randolph alleges that Harrisburg failed "to properly sanction or discipline Harrisburg Police Officers who are aware of and conceal and/or aid and abet violations of constitutional rights of individuals by other Harrisburg Police Officers." (ECF 1, ¶ 258f).

In limited circumstances, a municipality's failure to adequately train its police officers may serve as a basis for Section 1983 liability. *Connick*, 563 U.S. at 61. Competent evidence requires proof of "a widespread failure by policymakers to provide adequate training or supervision to subordinates," which amounts to deliberate indifference towards the rights of citizens. *Bryan County*, 520 U.S. at 405. The focus is on a deficient training program, which applied over a time to multiple employees. *Bryan County*, 520 U.S. at 407; *see City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

An alleged failure to supervise officers through written policies or otherwise also imposes the "demanding requirement of demonstrating" that the alleged failure rose to the level of "deliberate indifference on the part of the municipality." *Forrest,* 930 F.3d at 106; *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998).

A plaintiff proceeding under a failure or inadequacy theory "must take the deliberate-indifference path, not the custom-or-policy path." *Hightower v.*

17

*City of Philadelphia,* 130 F.4th 352, 356 (3d Cir. 2025) *(citing* and *quoting*

*Forrest,* 930 F.3d at 105-06*).* Deliberate indifference requires "proof that a

municipal actor disregarded a known or obvious consequence of his action."

*Hightower,* 130 F.4th at 357 (*quoting Bryan County*, 520 U.S. at 410).

This standard requires proof of "[a] pattern of similar constitutional

violations" that put the municipality on notice that its failure to act would be

deliberately indifferent to citizens' rights. *Connick*, 563 U.S. at 62; *Hightower,*

130 F.4th at 357. Similarity is a critical requirement for the pattern evidence

required to demonstrate the notice that precedes deliberate indifference.

*Connick*, 563 U.S. at 62-63 (fact that district attorney's office had four prior

cases overturned for *Brady* violations did not establish pattern and notice

that training was inadequate because the violations did not involve the same

types of evidence); *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (a

plaintiff can show deliberate indifference through "evidence that the

supervisory official failed to respond appropriately in the face of an

awareness of a pattern of such injuries."). Concrete facts are required. *Miller*

*v. City of Philadelphia*, 162 F.4th 88, 94 (3d Cir. 2025) (allegation that

defendant officer was named in 10 lawsuits insufficient to show deliberate

indifference where complaint did not allege similar unlawful conduct or

18

knowledge of policymakers, which "omissions are fatal to municipal liability based on a pattern.")

Lastly, the identified deficiency must have caused the constitutional violation. *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014). Similarity in conduct and temporal proximity are necessary for a reasonable inference of causation. *See Watson v. Abington Twp.*, 478 F.3d 144, 157 (3d Cir. 2007) (explaining that adequate causal connection under *Monell* has "typically involved an alleged constitutional violation that was an actual occurrence of the specific alleged custom.")

The Complaint says there were multiple examples of investigatory misconduct that were approved, allowed or disregarded by Harrisburg. These allegations, if substantiated, would provide a foundation for Plaintiff's claim that Harrisburg's inadequate training and supervision reflected deliberate indifference and caused the alleged violations of his Constitutional rights. But, as discussed in the preceding section, there is no evidence that Harrisburg was put on notice of the unconstitutional investigations now claimed to have been prevalent. *Hightower*, 130 F.4th at 357 (plaintiff failed to produce evidence of pattern as deputy warden who testified to prior similar inmate attacks "could not identify a single example.") "Without notice that a course of training is deficient in a particular respect, decisionmakers can

19

hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Against the unsupported allegations of indifference set forth in the Complaint, there is undisputed evidence of Harrisburg's practices, training and accreditation status that paints a much different picture. Rather than an agency that failed to train or supervise, there is substantial evidence that Harrisburg provided significant training and oversight. Harrisburg's practices included considerable attention to policies, legal updates, formal training, on-the-job training, and advanced training for CID investigators. (JSOF ¶¶ 101-122). These facts coincide with the absence of evidence showing investigatory misconduct, patterns evidence, or indifference.

The record establishes that there are no material fact issues under the deliberate indifference standard. *Carswell v. Borough of Homestead*, 381 F.3d 235, 245 (3d Cir. 2004) (affirming summary judgment for failure to establish deliberate indifference where there was evidence that "officers attend annual in-service courses, where they study, among other subjects, relevant court opinions," and police chief had updated the police manual two years prior to the incident); *see also Estate of Bing v. City of Whitehall, Ohio*, 373 F. Supp. 2d 770 (S.D. Ohio 2005) (evidence insufficient to show deliberate indifference in deadly force case, and pointing to evidence of

20

training, national accreditation, and annual firearms qualification requirement); *Matubang v. City and County of Honolulu*, Civil Action Nos. 09-00130, 10-00173, 2010 WL 1850184, at *12 (D. Hawaii May 7, 2010) (evidence of initial and annual training and police department's CALEA accreditation "undermines any claim of deliberate indifference.")

For these reasons, Randolph is unable to produce evidence of notice to Harrisburg that its policies or training were deficient. There is no evidence of similar constitutional violations, much less a pattern of violations that would put Harrisburg on notice that its failure to take specific action would be deliberately indifferent. *Hightower,* 130 F.4th at 356-357. Nor is Plaintiff able to demonstrate a causal connection between any claimed deficiency and the alleged constitutional injury. *City of Canton*, 489 U.S. at 392. Summary Judgment is appropriate.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff fails to establish a triable municipal liability claim against Defendant Harrisburg.

WHEREFORE, Defendant, City of Harrisburg respectfully requests that this Honorable Court grant its *Motion for Summary Judgment* and dismiss all claims against it with prejudice.

21

CAMPBELL DURRANT, P.C.

By:_____/s/Brian P. Gabriel_____
    Brian P. Gabriel (PA 73132)
    bgabriel@cdblaw.com
    Direct Dial (412) 395-1267
    535 Smithfield Street, Suite 700
    Pittsburgh, PA  15222
    (412) 395-1280 (Telephone)
    (412) 395-1291 (Facsimile)

    *Counsel for Defendant, City of Harrisburg*

Dated:       May 14, 2026

22

**CERTIFICATE PURSUANT TO LOCAL RULE 7.8(b)**

Pursuant to Local Rule 7.8(b), I hereby certify that, according to the word-count feature of Microsoft Word 2022 word processing program, this Brief contains 4,256 words and is therefore in compliance with the type-volume limitations set forth in Local Rule.

CAMPBELL DURRANT, P.C.

By: s/Brian P. Gabriel
    Brian P. Gabriel

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on May 14, 2026, the foregoing **Brief in Support of City of Harrisburg's Motion for Summary Judgment** was filed with the Clerk of Court using the CM/ECF system, which will notify the following of the filing of the same:

Paul A. Ellis, Jr., Esq. / Brad N. Sommer, Esq. / John K. Bryan, Esq.
pae@sommerlawgroup.com / bns@sommerlawgroup.com /
slg@sommerlawgroup.com
6 Market Square
Pittsburgh, PA  15222
*Counsel for Plaintiff*

David J. MacMain, Esq. / Brian C. Conley, Esq.
dmacmain@macmainlaw.com/bconley@macmainlaw.com
MacMain Leinhauser, P.C.
433 W. Market Street, Suite 200
West Chester, PA  19382
*Counsel for Sergeant Robert Fegan and*
*Investigators Donald Heffner, David Lau, and Kevin Duffin*


CAMPBELL DURRANT, P.C.


By:    /s/Brian P. Gabriel
            Brian P. Gabriel


4901-5155-0880, v. 2